**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

KEVIN W. TARPLEY,          )
                                        )
      Plaintiff,           )
                                          )
      v.                    )           No. 4:05-CV-573 CAS
                                          )
RICHARD STEPPS, et al.,     )
                                        )
      Defendants.      )

## MEMORANDUM AND ORDER

      This prisoner civil rights matter is before the Court on the motion for summary judgment filed by defendants Richard Stepps, Riley Keys, Donna Brand and Virginia Littleton.[1] Plaintiff, through appointed counsel, opposes the motion. For the following reasons, the Court will grant in part and deny in part the defendants' motion for summary judgment.

### I. Background.

      This is an action pursuant to 42 U.S.C. § 1983 seeking monetary relief for the alleged violation of plaintiff Kevin Tarpley's rights under the Fourth, Eighth and First Amendments to the United States Constitution. Plaintiff also asserts state law claims of assault and battery. Plaintiff alleges that defendant Stepps sexually assaulted him on the morning of April 11, 2004 during a pat-down search at the Missouri Eastern Correctional Center ("MECC"), as plaintiff was leaving the food service area. Plaintiff alleges that defendants Keys, Brand and Littleton placed plaintiff in administrative segregation after he stated that he wished to file a complaint against Stepps.

---

[1]Defendant Virginia Littleton was formerly known as and was originally sued as Virginia Gibbs.

In Count I of the Second Amended Complaint, plaintiff contends that defendant Stepps sexually assaulted him in violation of the Fourth Amendment while conducting the pat-down search on April 11, 2004. In Count II, plaintiff alleges that defendant Stepps' conduct of the pat-down search was a sexual assault in violation of the Eighth Amendment. In Count III, plaintiff alleges that defendants Littleton, Brand and Keys retaliated against plaintiff for reporting the sexual assault by placing him in administrative segregation ("ad seg") and denying him access to the prison grievance process. In Count IV, plaintiff alleges that defendant Stepps' actions in conducting the pat-down search constitute assault and battery under state law.

## II. Legal Standard.

The standards applicable to summary judgment motions are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

The initial burden is placed on the moving party. City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc., 838 F.2d 268, 273 (8th Cir. 1988) (the moving party has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in its favor). Once this burden is discharged, if the record shows that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on a material factual issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

Once the burden shifts, the non-moving party may not rest on the allegations in his pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of

material fact exists. Fed. R. Civ. P. 56(e); <u>Herring v. Canada Life Assur. Co.</u>, 207 F.3d 1026, 1029 (8th Cir. 2000); <u>Allen v. Entergy Corp.</u>, 181 F.3d 902, 904 (8th Cir.), <u>cert.</u> <u>denied</u>, 528 U.S. 1063 (1999). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). A dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Herring</u>, 207 F.3d at 1029 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)). A party resisting summary judgment has the burden to designate the specific facts that create a triable question of fact. <u>See</u> <u>Crossley v. Georgia-Pacific Corp.</u>, 355 F.3d 1112, 1114 (8th Cir. 2004).

With this standard in mind, the Court accepts the following facts as true for purposes of resolving this motion for summary judgment.

## III. <u>Facts</u>.

At all relevant times, Tarpley was an offender in the custody of the Missouri Department of Corrections ("MDOC"). Tarpley is currently confined at the Southeast Correctional Facility in Charleston, Missouri. In April 2004, he was confined under sentence in the custody of the MDOC at MECC. Prior to being confined at MECC, plaintiff was confined at Farmington Correctional Center, and before that, at MECC.

At all relevant times, the defendants were employed by the MDOC at MECC. Defendant Richard Stepps was a Corrections Officer I; defendant Riley Keys was a Captain; defendant Donna Brand was a Lieutenant; and defendant Virginia Littleton was a Lieutenant.

There are approximately 1100 offenders housed at MECC. The inmates eat breakfast, lunch and dinner in the food service area. The rear exit of the food service area has two doors and is where the inmates exit after they finish their meals. Guards are always posted at the rear exit doors of the food service area as the inmates exit following a meal. The inmates are pat-searched at random as they exit the rear doors of the food service area. The inmates are searched to check for contraband such as utensils, food items, or weapons that could be exchanged by the inmates during the meal, all of which posed a threat to the safety and security of the institution. On April 11, 2004, Stepps was posted outside the rear exit of the food service area.

Stepps conducted a pat-down search of Tarpley at the rear exit of the food service area as Tarpley was leaving, sometime between 6:30 a.m. to 7:00 a.m. Pat-downs generally take approximately fifteen to twenty seconds. The pat-down search conducted by Stepps was different than other pat-down searches plaintiff had received. Although the pat-down search initially seemed routine, during the course of the search Stepps squeezed both of plaintiff's buttocks. This action made plaintiff re-experience a sexual assault and rape plaintiff was subjected to by another inmate six months before at a different institution. As plaintiff was walking away from the kitchen area, he complained about the manner in which Stepps performed the search. Stepps ordered plaintiff to return and said, "Come here, and I'll show you how I do a pat-down search." Pl's Ex. 1 (Tarpley Aff. dated May 19, 2006 at 2, ¶ 8). Stepps then conducted an abbreviated second search in which he again squeezed plaintiff's buttocks. Another guard was present and witnessed the second search. Plaintiff cooperated with both searches at all times.

After the second search, plaintiff returned to his Housing Unit and told the housing officer that he wanted to file a complaint immediately. The housing officer told plaintiff that he needed to wait

in his housing area until the prison yard opened at 8:00 a.m. Tarpley Dep. at 24-25. After the yard opened, plaintiff asked Correctional Officer Satterthwaite to write him a pass to see the shift commander. Plaintiff and Satterthwaite "got into a small disagreement," but then Satterthwaite told Tarpley to report to the shift commander's office. Pl's Ex. 4 (Tarpley Aff. at 2). Defendants Keys, Brand and Littleton were all in the shift commander's office. Plaintiff arrived angry and speaking loudly, using "somewhat" foul language. Tarpley Dep. at 31. Plaintiff explained to them that Stepps had grabbed and squeezed his buttocks twice during a pat-down search outside of the kitchen area that same morning, and stated that he wanted the police to be called and to file a formal complaint. Keys, Brand and Littleton discussed the matter, and then Keys or Brand told plaintiff he was going to be placed in temporary ad seg "because of the allegations that [he] made," Pl's. Ex. 1 (Tarpley Aff. dated May 19, 2006 at 2, ¶ 12); or that "because of the charges that were being alleged against officer Stepps, and brought to their attention, [plaintiff] was being locked up pending investigation by the Ad-Seg committee." Pl.'s Ex. 4 (Tarpley Aff. at 2). Keys also told plaintiff that plaintiff had an anger problem because he stood up for his rights and told Keys about Stepps' actions. Id.

Plaintiff was handcuffed by Keys and then taken to the medical unit. Tarpley Dep. at 37-38. Plaintiff told Keys that he would be seeing his lawyer and that he wanted Stepps locked up. Keys told plaintiff to "shut the fuck up." Tarpley Dep. at 39. Plaintiff was then placed in temporary ad seg and was released back into the general prison population the next day, April 12, 2004. Plaintiff filed an Information Resolution Request (IRR), the first step in the prison grievance system, pertaining to the April 11, 2004 incident. Plaintiff requested that an inmate paralegal prepare an affidavit for him to submit with his IRR.

Plaintiff sought psychiatric treatment after the incident with Stepps. Plaintiff had been seeing the prison psychiatrist/psychologist prior to the incident, however, and had been taking the psychiatric medications Prozac and Trazodone for over a year before the incident occurred.

**IV. <u>Discussion</u>**.

The defendants move for summary judgment on plaintiff's claims under Section 1983 based on qualified immunity. The Court must employ a two-part inquiry to determine whether plaintiff's suit can proceed in the face of the assertion of qualified immunity. <u>See</u> <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001). The inquiry must be undertaken in the "proper sequence." <u>Saucier</u>, 533 U.S. at 200. First, the Court must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." <u>Id.</u> at 201. The "existence or nonexistence of a constitutional right" is a threshold question. <u>Id.</u>

Under step one of the <u>Saucier</u> analysis, if the court finds that no constitutional violation occurred, the analysis ends and the issue of qualified immunity is not addressed. <u>Saucier</u>, 533 U.S. at 201. If no constitutional violation occurred, the plaintiff's claim fails as a matter of law because the plaintiff did not prove an essential element of the § 1983 claim. <u>Ambrose v. Young</u>, 474 F.3d 1070, 1077 n.3 (8th Cir. 2007). If a constitutional right may have been violated, however, the second step requires the Court to ask whether the right was clearly established such that a reasonable official would understand that his "conduct was unlawful in the situation he confronted." <u>Saucier</u>, 533 U.S. at 201. This is a fact-intensive inquiry and "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u>

**A. Fourth Amendment**.

In Count I, plaintiff alleges that the pat-down searches conducted by Stepps violated his Fourth Amendment rights. Prisoners retain many constitutional rights, Bell v. Wolfish, 441 U.S. 520, 545 (1979), Turner v. Safley, 482 U.S. 78, 84 (1987), but some constitutional rights are necessarily limited due to considerations inherent in a penal system, O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). In Bell, the Supreme Court considered the constitutionality of post-visitation inmate body cavity searches, and explained that the basic test for the constitutionality of a search that invades the integrity of an inmate's body is reasonableness:

> In each case [the Fourth Amendment] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Bell, 441 U.S. at 559 (citations omitted). The Supreme Court emphasized that prison officials are afforded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Id. at 547.

The Fourth Amendment imposes a standard of reasonableness upon the exercise of discretion by government officials, in order to protect the "privacy and security of individuals against arbitrary invasions." Delaware v. Prouse, 440 U.S. 648, 653-54 (1979) (citations omitted). "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails." Bell, 441 U.S. at 559. At the time of the alleged violation, clearly established Fourth Amendment law entitled plaintiff to be free from any

unreasonable searches of his person. Smothers v. Gibson, 778 F.2d 470, 473 (8th Cir. 1985) (addressing strip search of prison visitor); Burns v. Loranger, 907 F.2d 233, 236 (1st Cir. 1990) (concerning strip search incident to execution of search warrant).

After considering the Bell factors, the Court finds that no genuine issues of material fact exist which preclude the entry of summary judgment in favor of the defendants on this claim. There is no allegation of a strip search or body cavity search in this case. Cf. Bell, 441 U.S. at 558. A pat-down search is by definition of short duration and minimal intrusiveness, even though some incidental touching of anal and genital areas may occur during a pat-down search. See Timm v. Gunter, 917 F.2d 1093, 1100 (8th Cir. 1990), cert. denied, 501 U.S. 1209 (1991). Plaintiff was not searched in an inappropriate location, as he was searched leaving the food service area where inmates are regularly chosen at random for pat-down searches. Cf. Young v. City of Little Rock, 249 F.3d 730, 736 (8th Cir. 2001) (officer performed strip search in front of six other detainees), cert. denied, 534 U.S. 1129 (2002); Nelson v. Dicke, 2002 WL 511449 at *9 (D. Minn. Mar. 31, 2002) (body cavity search performed in storage closet). The search was justified, as inmates could obtain or exchange contraband such as utensils, food items, or weapons during the meal, all of which posed a threat to the safety and security of the institution.

The only facts plaintiff offers to support an inference that the search was a sexual assault is that Tarpley briefly squeezed his buttocks twice in an incident lasting, at most, one minute. The allegations in this case are far less humiliating, degrading or overtly sexual than other cases in which summary judgment was deemed inappropriate. See, e.g., Seltzer-Bey v. Delo, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient

to withstand motion for summary judgment on plaintiff's Fourth Amendment claims); Watson v. Jones, 980 F.2d 1165, 1165-66 (8th Cir. 1992) (allegations that prison guard conducted daily routine pat-down searches for two months that consisted of tickling and "a deliberate examination of the genital, anus, lower stomach and thigh areas" were sufficient to withstand summary judgment motion in inmates' suit claiming that sexually harassing and physically intrusive pat-down searches violated Fourth Amendment rights).

The Court concludes that plaintiff cannot establish a Fourth Amendment violation because the pat-down searches in this case occurred on only one occasion, lasted no more than one minute, took place in a public area of the institution where pat-down searches were routinely conducted for legitimate institutional security reasons, were minimally intrusive, and were not accompanied by sexually harassing comments. As such, the searches to which plaintiff was subjected were brief and isolated incidents and do not rise to the level of a constitutional violation. As a result, the Court concludes that summary judgment is appropriate on the Fourth Amendment claim and the Court does not reach the issue of qualified immunity.

**B. Eighth Amendment**.

The Court now turns to plaintiff's claim that Tarpley violated his Eighth Amendment rights during the pat-down searches. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on those persons who have been convicted of crimes. Wilson v. Seiter, 501 U.S. 294, 297 (1991). To succeed on an Eighth Amendment claim a prisoner must allege and prove that he was subjected to the "unnecessary and wanton infliction of pain," id., but the particular standard to be applied depends upon the kind of action the plaintiff complains of. Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998). To constitute cruel and unusual punishment, conduct which is not meant

to be punishment "must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986). It is obduracy and wantonness, not inadvertence or error in good faith, that characterizes conduct prohibited by the Eighth Amendment. Id.

To prevail on an Eighth Amendment claim, a plaintiff must establish two elements: "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. at 298). The second element arises from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. Id. "To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind.'" Id. (quoting Wilson, 501 U.S. at 297). To be sufficiently culpable, the officer must have acted, subjectively, with deliberate indifference to inmate health or safety. Id.; see Berryhill (applying Eighth Amendment deliberate indifference standard in prison sexual harassment case).

"[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoting Whitley, 475 U.S. at 319); see, e.g., Women Prisoners of District of Columbia Dep't of Corrections v. District of Columbia, 877 F. Supp. 634 (D.D.C. 1994) (finding violation of the Eighth Amendment rights of a class of female inmates by prison guards subjecting inmates to sexual assaults, unsolicited sexual touching and sexually offensive remarks).

In Berryhill, the prisoner plaintiff alleged that two civilian maintenance workers had grabbed his buttocks in an incident that lasted less than a minute. The touch was not accompanied by any

sexual comments or banter, and the plaintiff did not assert that he feared sexual abuse during the incident. Berryhill filed suit, alleging that the workers' conduct was sexual harassment that violated his Eighth Amendment right to be free from cruel and unusual punishment, and claiming that he suffered asthma attacks and emotional distress as a result of the incident. The Eighth Circuit stated that the evidence showed the incident did not constitute discipline or undue force, and concluded that the plaintiff suffered nothing more "than a brief unwanted touch on his buttocks." 137 F.3d at 1076. The Court said would be "a distortion" to characterize the incident as a sexual assault, given the brief duration, lack of sexual comments, and lack of fear by the plaintiff, noting that not "every malevolent touch by a prison guard . . . gives rise to federal cause of action." Id. (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)); cf. Thornton v. Nash, 2007 WL 433393 at *12 (D.N.J. Feb. 5, 2007) (allegation that prison guard grabbed plaintiff's buttocks during a pat-down search to search for contraband as plaintiff was leaving food service area was an isolated incident that did not rise to the level of a constitutional violation and was dismissed for failure to state a claim); Hill v. Blum, 916 F. Supp. 470, 473 (E.D. Pa. 1996) (plaintiff's allegation that prison guard cupped and squeezed his genitals during a pat-down search as he left the prison kitchen failed to state a Fourth or Eighth Amendment claim where the search lasted two seconds, was conducted routinely for security reasons, and was in accordance with a regulation requiring that the "crotch area" be carefully searched); Duncan v. Keane, 1995 WL 649931 at *5-6 (S.D.N.Y. Nov. 6, 1995) (plaintiff's allegation that prison guard "felt all over" his "rear end" failed to state a claim for relief under the Eighth Amendment).

The allegations in the instant case, when viewed in the light most favorable to the plaintiff, do not state a claim under the Eighth Amendment. The facts of this case are much closer to Berryhill,

in which summary judgment was appropriate, than they are to <u>Seltzer-Bey</u> or <u>Watson</u>, and are virtually identical to <u>Thornton</u>, in which the claim was dismissed for failure to state a claim. The Court accepts for purposes of summary judgment that Stepps squeezed plaintiff's buttocks twice during the pat-down searches. As discussed above, the conduct consisted of two brief searches which took place in the food service area where pat-down searches for routinely conducted for contraband, took place around other inmates, and were not accompanied by sexual comments. Although plaintiff asserts that the searches caused him to re-experience a traumatic prison rape that occurred at the hands of another inmate previously, he does not allege that he feared sexual abuse during the incident. <u>Cf.</u> <u>Berryhill</u>, 137 F.3d at 1076-77.

In addition, although plaintiff alleges that he sought medical attention from the prison psychologist/psychiatrist as a result of the incident, the record shows that plaintiff was already seeing this doctor when the incident occurred and that he had been on Prozac and Trazodone for over a year. "Demonstrating a serious or permanent injury is not required to make out an Eighth Amendment claim, but some actual injury must be shown and the extent of the injury and pain suffered are relevant concerns in determining whether the conduct amounts to cruel and unusual punishment.:" <u>Berryhill</u>, 137 F.3d at 1076-77 (cited case omitted). In this case, plaintiff has not shown an injury.

For these reasons, plaintiff's allegations do not arise to the level of an unnecessary and wanton infliction of pain, and summary judgment is appropriate. The Court therefore does not reach the issue of qualified immunity.

### C. Retaliation.

Plaintiff alleges that defendants Littleton, Brand and Keys retaliated against him for reporting Stepps' conduct and stating that he wanted to file a complaint against Stepps, by placing plaintiff in administrative segregation. Defendants move for summary judgment on the basis that plaintiff was angry and using foul language in the shift commander's office, and thus there is "some evidence" to support Keys' decision to place plaintiff in ad seg "for the security and good order of the institution."[2] Defs.' Mem. Supp. Mot. Summ. J. at 12; Defs.' Ex. I. Defendant also assert that plaintiff did not exercise his constitutional rights and as a result there could be no retaliation; that there is no evidence that Brand or Littleton played any role in plaintiff's placement in ad seg, and therefore they are entitled to summary judgment; and that plaintiff's placement in ad seg did not preclude him from filing a grievance concerning the pat-down searches.

The Court rejects defendants' conclusory argument that plaintiff did not exercise his First Amendment rights. Plaintiff sought permission to go to the shift commander's office to report that a guard had sexually assaulted him, and once there, stated that he wished to file an official complaint and have the police called. This constitutes an exercise of plaintiff's First Amendment rights. The cases cited by defendants are factually inapposite and therefore are unpersuasive. Defendants' argument that plaintiff was not precluded from filing a grievance misses the mark; plaintiff does not assert a denial of access to the courts claim. Plaintiff's retaliation claim does not depend on the defendants having prevented him from filing a grievance.

---

[2]The defendants also assert that Tarpley was placed in ad seg because of the serious nature of his allegations against Stepps, which had to be investigated.

Defendants' argument that plaintiff was placed in ad seg for legitimate reasons (either because the serious charges plaintiff raised had to be investigated, or because plaintiff was causing a disturbance), is controverted on summary judgment by plaintiff's affidavit that he was placed in ad seg because Keys, Brand and Littleton were angry that he had complained about Stepps' conduct. The Court concludes that the facts alleged, when taken in the light most favorable to plaintiff, show that defendants violated plaintiff's right to be free from retaliation when they placed him in ad seg for his complaints concerning Stepps' actions in squeezing his buttocks during the pat-down searches.

An act taken in retaliation for the exercise of a constitutionally-protected right under § 1983 is actionable even if the act, when taken for a different reason, would not have been actionable. Williams v. Department of Corrections, 208 F.3d 681, 681 (8th Cir. 2000); Madewell v. Roberts, 909 F.2d 1203, 1206 (8th Cir. 1990); cf. Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) (threat of retaliation is sufficient injury if made in retaliation for inmate's use of prison grievance procedure); see also Rollie v. Kemna, 124 F.App'x 471 (8th Cir. 2005) (allegation that prison officials retaliated against inmate who complained about double-celling by extending his sentence in solitary confinement from six months to one year and issuing conduct-violation reports stated a claim for retaliation). The Court concludes that plaintiff's allegation that defendants violated his First Amendment rights by placing him in ad seg in retaliation for complaining about Stepps' conduct states a claim sufficient to survive summary judgment.

Because plaintiff has alleged the violation of a constitutional right, the Court must determine whether that right was clearly established for purposes of qualified immunity. Saucier, 533 U.S. at 201. The Court concludes this right was clearly established, based on Eighth Circuit precedent which holds that prison officials may violate a prisoner's constitutional rights by taking actions in retaliation

for the prisoner's prior exercise of his constitutional rights. See Royal v. Kautzky, 375 F.3d 720, 722 (8th Cir. 2004) (prisoner's First Amendment rights were violated when he was placed in administrative segregation for sixty days after making numerous complaints and grievances); Trobaugh v. Hall, 176 F.3d 1087, 1088-89 (8th Cir. 1999) (prisoner's First Amendment right to petition for redress was violated when he was placed in administrative segregation for three days in retaliation for having filed grievances); see also Williams, 208 F.3d at 681 (inmate stated retaliation claim against correctional officers by alleging they placed leg irons too tightly on him because of their displeasure with his participation in a trial); Goff v. Burton, 7 F.3d 734, 736-37 (8th Cir. 1993) (prison officials may not transfer an inmate to another institution in retaliation for inmate's filing of legal actions), cert. denied, 512 U.S. 1209 (1994); Madewell, 909 F.2d at 1206 (prison officials may not block reclassification opportunities or worsen plaintiffs' living and working conditions in retaliation for their litigation activities); Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) (filing of a disciplinary charge against a prisoner in retaliation for his having filed a grievance pursuant to established procedures is actionable under § 1983). Defendants' motion for summary judgment on plaintiff's retaliation claim based on qualified immunity should therefore be denied.

The Court also concludes that there is sufficient evidence to preclude summary judgment in favor of defendants Brand and Littleton at this time. Plaintiff testified in deposition that Brand actively participated in the discussion about placing him in ad seg, see Tarpley Dep. at 31, and submitted an affidavit which states in part that Brand informed plaintiff he was being taken to ad seg because of the allegations he brought against Stepps, see Pl.'s Ex. 4 at 2. Plaintiff also avers that Littleton actively participated in the decision to place him in ad seg, see Pl.'s Ex. 1 at 2, ¶ 12, and

testified that during the discussion among the officers, Littleton informed Keys of a prior verbal confrontation she had with plaintiff.  Tarpley Dep. at 32.

### D.  Assault and Battery.

In Count IV of the Second Amended Complaint, plaintiff asserts state law claims of assault and battery against defendant Stepps.  The defendants move for summary judgment on these claims asserting that they are barred by the state law doctrines of official immunity and public duty. Defendants do not allege that plaintiff has failed to state a claim of either assault or battery under state law.

### 1.  Official immunity

Under the Missouri doctrine of official immunity, public officials acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions, but may be held liable for torts committed when acting in a ministerial capacity.[3]  Kanagawa v. State ex rel. Freeman, 685 S.W.2d 831, 835 (Mo. 1985) (en banc), overruled on other grounds by Alexander v. State, 756 S.W.2d 539 (Mo. 1988) (en banc).  Whether an act can be characterized as discretionary depends upon the degree of reason and judgment required to carry it out.  A discretionary act requires "the exercise of reason in the adaption of means to an end, and discretion in determining how or whether an act should be done or a course pursued."  Rustici v. Weidemeyer, 673 S.W.2d 762, 769 (Mo. 1984) (en banc) (quoted case omitted).

---

[3]The Court assumes for purposes of the instant motion for summary judgment that defendant Stepps is a public official, as opposed to a mere public employee.  See State ex rel. Howenstine v. Roper, 155 S.W.3d 747, 752 (Mo. 2005) (en banc) (discussing test for determining when an individual is a public officer within the context of the official immunity analysis).

Defendants argue that official immunity has been used to shield a number of law enforcement functions from liability as discretionary, including designing policies and standards for prison security, Kanagawa, 685 S.W.2d at 836, and disciplining prisoners, Shivers v. Barnes, 813 S.W.2d 121, 123 (Mo. Ct. App. 1991). Defendants contend that all of Stepps' actions described in the complaint are discretionary.

Plaintiff responds that Stepps' actions in conducting the two pat-down searches were ministerial, because there is evidence that Stepps conducted the searches in accordance with existing prison procedures. Therefore, Stepps' actions in conducting the searches did not require a discretionary judgment call, and did not involve policymaking or any other exercise of professional judgment or expertise. Plaintiff cites Geiger v. Bowersox, 974 S.W.2d 513 (Mo. Ct. App. 1998) (prison nurse's duties included maintenance and administration of inmates' prescriptions as directed by prison policy and did not involve policy making or the exercise of professional expertise or judgment; nurse was not entitled to official immunity on claim that she improperly placed prisoner's prescription bottle into control of housing unit guards, after which Maalox bottle was filled with liquid floor wax which prisoner ingested).

The Court concludes that Stepps' actions in conducting two pat-down searches of the plaintiff are ministerial functions. Analogous to the situation in Geiger, Stepps was directed to conduct pat-down searches at the food service area on the day in question, and the conduct of pat-down searches is governed by prison policy. Stepps was not exercising professional judgment or expertise when he randomly selected plaintiff for a pat-down search.

The cases cited by defendants involve distinguishable facts and are not persuasive In Kanagawa, the plaintiff sued the director of the Missouri Department of Corrections and the director

of a prison, alleging they were negligent in allowing a prisoner to escape and failing to ensure that the facility was adequately secured. The Missouri Supreme Court found that the defendants were entitled to official immunity. As the ranking officials in the state correctional system, the defendants were responsible for designing the policies and standards for prison security that, when carried out by subordinates in the course of their duties, safeguard inmates and the public from harm, and these decisions necessarily involved the exercise of a substantial degree of judgment. Id., 685 S.W.2d at 836-37. In contrast, Stepps' conduct in carrying out orders and prison regulations regarding searches constitutes a function that must be routinely performed and are properly characterized as ministerial. See id.

In Shivers, the court concluded that the head of a prison classification team, Barnes, was exercising judgment and discretion when he recommended a course of discipline following a hearing on a conduct violation report. The court found that Barnes had the discretion to choose the form and extent of the recommended punishment, and therefore was entitled to official immunity on the prisoner plaintiff's action for return of or compensation for a confiscated item. Id., 813 S.W.2d at 123. In contrast, Stepps' conduct in carrying out the pat-down searches did not involve the exercise of similar judgment and discretion.

Defendants' motion for summary judgment on the assault and battery claims based on official immunity should therefore be denied.

### 2. Public Duty Doctrine

The Missouri public duty doctrine provides that a public employee may not be held civilly liable for the breach of a duty owed to the general public, as opposed to a duty owed to a particular individual. Heins Implement Co. v. Missouri Highway & Transp. Comm'n, 859 S.W.2d 681, 594

(Mo. 1993) (en banc). The doctrine "serve[s] to delineate the legal duty which the defendant official owes to the plaintiff." Green v. Denison, 738 S.W.2d 861, 865 (Mo. 1987) (en banc), abrogated on other grounds by Davis v. Lambert-St. Louis Int'l Airport, 193 S.W.3d 760 (Mo. 2006) (en banc). "Perhaps the primary purpose of the public duty doctrine is to protect modestly compensated civil servants against multifarious claims. Another purpose, however, is to allow a public servant to proceed with the task at hand, without suffering inappropriate diversion by additional considerations. This concept is related to the official immunity concept[.]" Green, id. at 866.

The Missouri Court of Appeals has discussed the relationship between the public duty and official immunity doctrines, explaining that the doctrines generally produce the same result:

> To bring a public official, or a public employee, within the protection of the public duty doctrine, it is not sufficient that he be acting within the scope of his employment; he must be engaged in some particular duty of his office or employment which-to borrow the official immunity terminology-calls for his professional expertise and judgment. The public duty doctrine is defined differently than the official immunity doctrine. The public duty doctrine holds that a public official, or a public employee, may not be held liable to a person injured by his negligence in the performance of his public duty, because his duty is owed only to the general public, and not to the person injured. In the case of a public official, rarely if ever will the public duty doctrine provide a shield from liability where the official immunity doctrine would not. The two doctrines merge; they produce the same result. It may be that the public duty doctrine will furnish protection to a public employee who is not a public official in a case where the official immunity doctrine would not.

Brown v. Tate, 888 S.W.2d 413, 416 (Mo. Ct. App. 1994) (cited cases omitted).

In this case, the Court finds the public duty doctrine is not applicable. "The kind of duty owed to the public at large, rather than the individual injured, is the kind that requires the public official to use his professional expertise, training and judgment; it is not sufficient that the public official be acting within the scope of his employment." Davis-Bey v. Missouri Dep't of Corrections, 944 S.W.2d 294, 298 (Mo. Ct. App. 1997). A public official can be liable if the law imposes on the officer ministerial

duties in which an individual has a "special, direct, and distinctive interest," and breach of the official's duties causes injury to the individual. <u>State ex rel. Twiehaus v. Adolf</u>, 706 S.W.2d 443, 445 (Mo. 1986) (en banc).

Defendant Stepps' ministerial duty to carry out pat-down searches was owed to fellow correctional officers, other employees of the MECC, and inmates, because the searches were conducted to find potential contraband which posed a threat to the safety and security of the institution. This was not a duty owed to the general public at large. Stepps' alleged failure to follow his ministerial duty is claimed to have caused injury to plaintiff. Defendants' motion for summary judgment based on the public duty doctrine should therefore be denied.

**V. <u>Conclusion</u>**.

For the foregoing reasons, the Court will grant in part and deny in part defendants' motion for summary judgment. Defendants' motion will be granted as to plaintiff's Fourth and Eighth Amendment claims in Counts I and II against defendant Stepps, and denied in all other respects. Remaining for trial are plaintiff's Section 1983 retaliation claims in Count III against defendants Keys, Brand and Littleton, and state law assault and battery claims in Count IV against defendant Stepps. This matter will be set for trial by separate order.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**; said motion is **GRANTED** with respect to plaintiff's Fourth and Eighth Amendment claims against defendant Stepps in Counts I and II, and **DENIED** in all other respects. [Doc. 29]

An appropriate partial judgment will accompany this memorandum and order.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this  19th  day of March, 2007.